THE STATE OF NEW JERSEY v. ATLANTIC CITY AND SHORE RAILROAD COMPANY AND CENTRAL PASSENGER RAILWAY COMPANY.

Argued November 7, 1907—Decided February 24, 1908.

1. Under the express terms of section 51 of the Corporation act of this state every domestic corporation, no matter under what law it may have been organized, may acquire and hold the stock and bonds of any other corporation, domestic or foreign, even to the extent of acquiring a controlling interest, and hence a corporation organized under the General Railroad law may acquire and hold the bonds of, and a controlling interest in the stock of, a corporation organized under the Street Railway law.

2. Though only such vehicles may be used upon its tracks by a street railway company as its charter, or the general law under which it operates, permits, a traffic agreement made between it and a steam railroad company by the terms of which cars belonging to the latter company, of the same character as those used by the former company, are to be run over its tracks by the street railroad company, is valid.

---

On demurrer to plea filed to an information in the nature of a *quo warranto.*

Before GUMMERE, CHIEF JUSTICE, and Justice BERGEN.

For the demurrants, *Eli H. Chandler* (the attorney-general on the brief). ·

*Contra, Clarence L. Cole.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The averments of the information are that the defendant the Atlantic City and Shore Railroad Company (hereinafter designated as the "Shore Company") is a corporation formed under the General Railroad law of the state, and that the defendant the Central Passenger Railway Company (hereinafter designated as the "Central Company") is a corporation organized under the statute of this state providing for the incorporation of street railway companies; that the line of the Shore Company extends from a place known as Thoroughfare to Atlantic City, its terminal in the latter place being at the corner of Adriatic and Virginia avenues; that the line of the Central Company traverses certain streets of Atlantic City and intersects that of the Shore Company at its Atlantic City terminal; that the Shore Company has acquired a large majority of the stock and bonds of the Central Company, and, by virtue of its ownership of such stock, assumes to operate the road of the Central Company and its own road as a single line, and runs its cars from its Thoroughfare terminal through to the further terminal of the Central Company. The information then charges that the acquisition by the Shore Company of the Central Company's stock and bonds, and its operation of the roads of the two companies as a single line, is *ultra vires* the corporation, and seeks an annulment of the respective articles of incorporation of the two companies.

The Shore Company and the Central Company by their pleas admit the purchase of the stock and bonds of the latter company by the former, but deny that since the acquisition thereof the Shore Company has operated the two roads as a joint line, and aver that the Central Company still operates its own road as fully and completely as it did before the

Shore Company acquired its holdings of the stock and bonds thereof. The pleas then admit that certain of the trolley cars of the Shore Company are run through from Thoroughfare to the terminal of the line of the Central Company at the boardwalk in Atlantic City and back again, but aver that this is done under a traffic agreement existing between the two companies for the purpose of affording passengers who desire to do so the opportunity to make the journey without change of cars; that by the terms of the agreement, when these cars coming from Thoroughfare reach the intersecting point of the two roads they are turned over by the Shore Company to the Central Company, and are thereafter operated by the latter company at its own expense and by its own employes so long as they remain upon its road.

To these pleas the informant demurs.

On the argument before the court the only matters mooted were the right of the Shore Company to acquire a controlling interest in the stock and bonds of the Central Company and the power of the two companies to enter into a traffic agreement of the nature set out in the plea. The contention on the part of the state upon the first point is that a railroad company incorporated under the General Railroad law has no right to acquire the stock of another corporation, for the reason that such right is not expressly conferred by that act, and that the provision of the third section of the act (*Pamph. L.* 1903, *p.* 647) that "every railroad company shall have the general powers conferred by the act entitled 'An act concerning corporations,' and the supplements thereto, and shall be governed by the provisions and be subject to the restrictions and liabilities in said act contained, so far as the same are appropriate to and not inconsistent with this act," is not broad enough to confer such right, the argument being that by this section only such powers are granted as are appropriate and convenient to carry into effect the principal franchises granted to companies incorporated under the General Railroad law.

We are inclined to think that this view of the scope of the

third section of the General Railroad law is too narrow. The
present case, however, does not call for a determination of its
true construction. In the year 1893 the legislature, by an
amendment to the General Corporation act, conferred upon
companies organized under that act authority to purchase,
hold, sell, assign and transfer the shares of the capital stock
of any other corporation or corporations created under the
laws of this or any other state. *Pamph. L.* 1893, *p.* 301. In
the revision of that act in 1896 the limitation of this author-
ity to companies organized under the General Corporation
act was wiped out, and it was enacted that "*any* corporation
may purchase, hold, sell, assign and transfer the capital stock
of, or any bonds, securities or evidences of indebtedness cre-
ated by, any other corporation or corporations of this or any
other state." *Pamph. L.* 1896, *p.* 294, § 51. The extent to
which the power to acquire and hold stock was enlarged by
this latter enactment was one of the subject-matters of con-
sideration by the Court of Errors and Appeals in the case of
*Warren* v. *Pim,* 21 *Dick. Ch. Rep.* 353. The conclusion of
Mr. Justice Dixon, who delivered the principal opinion of the
court, was that the power was conferred upon *all New Jersey
corporations. Id. p.* 359, 360. Mr. Justice Swayze, who de-
livered the dissenting opinion in the case, held the view that
this power was conferred upon *every* corporation, foreign as
well as domestic. *Id. p.* 414. Mr. Justice Pitney, although he
considered the matter one which the controversy did not re-
quire to be determined, inclined to the view that the construc-
tion put upon the statutory provision by Mr. Justice Dixon
was too narrow. *Id. p.* 364, 365. No judge expressed—and
apparently no judge entertained—the opinion that the right
conferred was not at least as broad as declared by Mr. Justice
Dixon. We think, therefore, that it must be accepted as set-
tled by the decision referred to that the legislature, by the
fifty-first section of the General Corporation act, has conferred
upon *every corporation* of this state, no matter under what
law it may have been organized, the right to acquire and hold
the stock and bonds of any other corporation of this or any

other state, and we therefore hold that the exercise of this right by the Shore Company was not *ultra vires.*

It is further contended on the part of the state that if it be considered that the fifty-first section of the General Corporation act authorized the acquisition by the Shore Company of stock and bonds of the Central Company, it did not authorize it to purchase and hold a majority of such stock, and thereby control the management and operation of the latter company. It will be observed, however, that the statute puts no limitation upon the quantity of the stock or bonds which may be acquired under its authority, and it cannot therefore properly be declared by the courts that such limitation exists, for such declaration would be the exercise of a legislative and not of a judicial function. It may perhaps be that the authority conferred by this section is not so broad as to permit one corporation to acquire all of the stock of another, and so destroy its organization and power to exercise its franchise, but short of this no limit seems to have been placed by the legislature upon this power, either expressly or by implication. The act of the Shore Company in purchasing and holding a controlling interest in the stock of the Central Company was therefore within the power conferred upon it by the legislature.

The discussion of the validity of the traffic agreement by counsel for the state is purely formal. They merely assert that agreements of such a character are illegal, for the reason that under them trains of any steam railroad company could be operated over the tracks of any street railway company of the state. It is, of course, true that only such vehicles of transportation can be used upon the tracks of street railway companies as the special charters of such companies or the general law under which they are organized permit, and if this agreement had for its purpose the running through the streets of Atlantic City, over the tracks of the Central Company, trains of cars drawn by a locomotive engine operated by steam, it would plainly be void. But it has no such sweep. It merely arranges for the running, over the tracks of the

Central Company, by that company, of cars belonging to the Shore Company, of the same kind as those which the Central Company is entitled to use by the terms of the act under which it is incorporated. We perceive no reason for denying to the Central Company the right to use, in the operation of its road, cars the ownership of which is in some other person or corporation. The legislature has not seen fit to require it to own the cars which it uses, and its right, therefore, to obtain its cars wherever and under such terms as it deems proper is untrammeled. So, too, the legislature has not prohibited the Shore Company from allowing its cars to be run over the roads of other companies, and, while so running, to be operated by such other companies. It is a matter of universal knowledge that the cars of steam railroad companies, particularly freight cars, are used interchangeably by their owners and the companies with which they have traffic arrangements, and that this is as true with relation to companies organized under the laws of this state as it is with those organized under the laws of foreign jurisdictions, and we are unable to see anything illegal in such an arrangement. We conclude that the attack upon the validity of the agreement set up in the pleas of the defendants is without merit.

The defendants are entitled to judgment on the demurrer.